UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GARY F. SEITZ,
Chapter 7 Trustee of the Bankruptcy
Estate of Continental Paper Box Company, Inc.,

                                Plaintiff,

                                                                                 DECISION AND ORDER

                                                                                 07-CV-6067L

                                v.

PAUL T. FREUND CORPORATION,
et al.,

                                Defendants.
_____

      Plaintiff Gary F. Seitz ("Seitz"), Chapter 7 trustee of the bankruptcy estate of Continental Paper Box Company, Inc. ("Continental"), brings this action against defendants alleging violations of defendants contractual obligations pursuant to an agreement between the parties.

      Defendants now move for summary judgment dismissing the complaint, on the grounds that defendants' non-performance is excused by plaintiff's failure to assume the contract after Continental was placed into bankruptcy (Dkt. #34). For the reasons that follow, defendants' motion for summary judgment is granted, and the complaint is dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

The material facts in this matter are not in dispute.

On or about July 1, 2002, Continental entered into a Manufacturing, Marketing and Services Agreement ("Agreement") with Paul T. Freund Corporation ("Freund") and Continental Freund LLC ("Continental Freund") (collectively, "defendants"). The Agreement provided that Continental would continuously market defendants' products, and would refer a minimum of $2,000,000 in business to defendants over the course of its one-year term. In exchange, defendants would pay Continental certain specified commissions, and promise not to compete with Continental by manufacturing a similar product for a period of eighteen months after the expiration of the Agreement.

On January 31, 2003, Continental Paper was involuntarily placed into bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. As of that date, the parties were six months into their year-long Agreement, and Continental had referred $862,268.76 in customer orders to the defendants, $710,934.89 of which had been collected. Defendants had also paid a $65,000.00 cash advance to Continental, and had sold certain materials to Continental for which Freund was owed $45,514.27.

Section 365 of the Bankruptcy Code provides that, in certain circumstances, a bankruptcy trustee may opt to assume the obligations of an executory contract of the debtor. 11 U.S.C. §365. It is undisputed that the trustee for Continental did not assume the Agreement, and as of January 31, 2003, Continental ceased to do business, ended all of its customer relationships, and stopped referring customer orders to the defendants.

On February 7, 2007, plaintiff, as trustee of Continental's bankruptcy estate, commenced the instant action, alleging that defendants owed Continental unpaid commissions, and that defendants had breached the Agreement's restrictive covenant by soliciting Continental customers.

**DISCUSSION**

**I.     Summary Judgment**

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). (2000). In determining a motion for summary judgment, the Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. When considering a motion for summary judgment, the Court must construe all inferences from underlying facts in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587-88 (1986), *citing United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

While granting Continental the favorable inferences due to it as a nonmovant, I find that Continental has failed to raise a material question of fact concerning its entitlement to unpaid commissions, or the executory nature of the Agreement, and therefore judgment should be entered in favor of defendants.

## II.   Continental's Breach of Contract Claims

The parties do not dispute that pursuant to Section 365, an executory contract is deemed rejected unless it has been assumed by the debtor's estate. 11 U.S.C. §365(a)("the trustee . . . may assume or reject any executory contract or unexpired lease of the debtor"). The parties also agree that – pursuant to New York state law, which is designated in the Agreement's choice of law provision – if the Agreement is an executory contract, then the trustee's failure to assume it on behalf of Continental effected a material breach of the Agreement, which excused the defendants from further compliance with its terms. *See e.g.*, *In re Lavigne*, 114 F.3d 379, 386-387 (2d Cir. 1997). The only material dispute presented here is whether, as a matter of law, the Agreement is an executory contract. I find that it is.

The Bankruptcy Code provides no definition for the term, "executory contract." As district courts in this Circuit have noted, "there are essentially three approaches to executoriness": the so-called Countryman Test proposed by a Harvard law professor, the related but less stringent "some performance due" test attributed to the relevant legislative history, and the "functional" approach based upon the underlying purpose of the assumption power articulated by Section 365: enhancing the debtor's estate. *See In re Riodizio, Inc.*, 204 B.R. 417, 421-425 (Bankr. S.D.N.Y. 1997) (describing and applying each approach). *See also Shoppers World Cmty. Ctr., L.P. v. Bradlees Stores, Inc.*, 2001 U.S. Dist. LEXIS 14755 at *24 (S.D.N.Y. 2001) (applying the Countryman test).

While the Second Circuit has not addressed which test is controlling, I find that the Agreement meets the most rigorous, Countryman standard, and therefore would reach the same

conclusion regardless of which test is applied. *See e.g.*, *In re Chateaugay Corp.*, 102 B.R. 335, 345 n.11 (Bankr. S.D.N.Y. 1989).

The Countryman test provides that an executory contract is one "under which the obligations of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Vern Countryman, *Executory Contracts in Bankruptcy: Part 1*, 57 Minn. L. Rev. 439, 460 (1973). Determination of whether a breach is material is a factual question resolved by resort to state law. *See In re Teligent, Inc.*, 268 B.R. 723, 730 (Bankr. S.D.N.Y. 2001). In New York, a material breach is one which substantially defeats the purpose of the contract, and if uncured, will operate to excuse the other party from further performance. *See In re Lavigne*, 114 F.3d 369, 386-387 (2d Cir. 1997), *citing Dept. of Econ. Dev. v. Arthur Anderson & Co.*, 924 F. Supp. 449, 483 (S.D.N.Y. 1996). *See also NAS Electronics, Inc. v. Transtech Electronics PTE Ltd.*, 262 F. Supp. 2d 134, 135 (S.D.N.Y. 2003) ("[u]nder New York law, when one party has committed a material breach of a contract, the non-breaching party is discharged from performing any further obligations under the contract").

I recognize that "[t]he issue of whether a party has substantially performed is usually a question of fact and should be decided as a matter of law only where the inferences are certain." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007), *citing Anderson Clayton & Co. v. Alanthus Corp.*, 91 A.D.2d 985, 457 N.Y.S.2d 578 (2d Dept. 1983). Here, the concrete terms of the Agreement – its fixed term and specification of the dollar amount of business to be referred to defendants by Continental (and, implicitly, the corresponding amount of

commissions Continental expected to receive) – provide a ready measuring stick by which to judge the substantiality of the parties' performance. The Agreement obligated Continental to refer $2,000,000 in business to the defendants, as well as to market defendants' services, for and within a duration of one-year. At the time of Continental's bankruptcy, the parties agree that Continental had referred $862,268.76 in customer orders to the defendants, and had marketed defendants' products for a period of six months.

Continental now urges the Court to adopt an alternative calculation, different from the total to which it agreed in parties' stipulated Statement of Undisputed Facts submitted in support of this motion, which allegedly includes certain orders that were later decreased or canceled, to increase the total of customer orders that it referred to $1,110,924.02.[1] However, regardless of which number is used, I find that the Agreement, only halfway through its one-year term, with between 43% and 56% of the agreed-upon minimum customer referrals having been made by Continental, incomplete payment of earned commissions by defendants, and Continental's marketing obligations only half completed, was executory as to both parties, since neither party had achieved substantial performance and thus "the failure of either [party] to complete performance would constitute a material breach." Countryman, *Executory Contracts in Bankruptcy: Part 1*, 57 Minn. L. Rev. 439 at 460. In short, each party had received only an approximated half of the benefit of their bargain.

Continental argues that its performance on or after January 31, 2003 was essentially optional, relying upon a provision in the Agreement which states that, in the event Continental fails to refer the minimum $2,000,000 in business, defendants will be entitled to partial reimbursement of the

---

[1] Although Continental's original calculation of $1,410,924.02 mistakenly accounted for a $300,000 order twice, that error is corrected here.

"Agreement Fee" previously paid by Continental to defendants. However, the provision, on its face, operates merely to limit defendants' damages in the event of a breach by Continental. I find no basis to conclude that it excuses Continental from its marketing and referral obligations under the Agreement or otherwise minimizes the magnitude of Continental's breach by ceasing performance as of January 31, 2003.

As such, I find that the Agreement was, as a matter of law, executory, and the trustee's failure to assume it places Continental in material breach, 11 U.S.C. §365(g), excusing defendants from any further obligations under the Agreement.

The parties do not dispute that a material breach of the Agreement by Continental would, under New York law, excuse defendants from further compliance with the terms of the Agreement, including its restrictive covenant. Moreover, no equitable purpose would be served by enforcing the Agreement's restrictive covenant in favor of Continental, an entity which no longer exists or has any customer interests to be protected.

Continental also alleges, and defendants concede, that Continental is owed some commissions on, inter alia, monies received by defendants in a settlement with a customer that was referred by Continental. However, regardless of whether Continental's outstanding commissions are calculated using the numbers and methods championed by Continental (Dkt. 36, Att. 1 at ¶15, citing the parties' originally stipulated figure of $36,372.68) or those now proposed by defendants (calculated to total $4,4620.59), the amount of such commissions is less than the amount of defendants' outstanding credits for pre-paid commissions and materials that it sold to Continental, which the parties have stipulated to be $45,514.27. (Dkt. 36, Att. 1 at ¶18). Because Continental

cannot ultimately recover any damages on its claim for underpaid commissions, that claim must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Dkt. #34) is granted and plaintiff's complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
April 15, 2009.